# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PAUL M. BATES** | **CIVIL ACTION** |
| **VERSUS** | **NO.  13-0506** |
| **N. BURL CAIN, WARDEN** | **SECTION "N" (4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.      State Factual and Procedural Background[2]

The petitioner, Paul M. Bates ("Bates"), is a convicted prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3]  On February 10, 1994, Bates was indicted by a Tangipahoa Parish Grand Jury for the second degree murder of his wife, Carolyn Bates.[4]  He entered a plea of not guilty to the charge on February 23, 1994.[5]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Contrary to this Court's briefing order, the Louisiana Attorney General's Office did not produce the appellate record or any records from the Louisiana Supreme Court; counsel has not offered an explanation for its failure to do so. *See* Rec. Doc. No. 5.  Nevertheless, the Court finds that the record is adequate to address the petition.  The Louisiana Attorney General's Office is advised to fully comply with future briefing orders from this Court.

[3]Rec. Doc. No. 1.

[4]St. Rec. Vol. 1 of 1, Indictment, 2/10/94.

[5]St. Rec. Vol. 1 of 1, Minute Entry, 2/23/94.

The record reflects that, sometime between the late evening hours of December 24, 1993 and the very early hours of December 25, 1993, Bates stabbed his wife, Carolyn, to death while they were at her mobile home in Independence, Louisiana.[6]  The autopsy performed by the Tangipahoa Parish Coroner, Dr. Vincent N. Cefalu, revealed that Carolyn suffered a total of sixteen stab wounds. This included eight defensive wounds to her hands and deep stab wounds near her left eyebrow, the left side of her chin, and her left occipital area.  She also sustained two knife wounds to her upper right thigh, her right arm, and the left backside of her chest.  Dr. Cefalu determined that the fatal wound was a very deep stab wound to the right abdomen which lacerated the left lobe of the liver and the abdominal aorta.

After the stabbing and realizing that she was dead, Bates left the trailer and spent the remainder of the night at his mother's house in Kentwood, Louisiana.  At approximately 11:00 a.m. on Christmas morning, Bates admitted the killing to his sister-in-law, Alice "Coreen" Bates.  He also claims to have attempted suicide which resulted in his being taken to the hospital.  In the meantime, Coreen reported the incident to the Kentwood City Police Department.  The matter was turned over to the Tangipahoa Parish Sheriff's Department and the Independence City Police Department, both of which had jurisdiction over the offense.

The officers from both departments went to the crime scene at the trailer as part of their investigation.  On December 26, 1993, Bates was taken into police custody from the hospital where he had been recovering from his alleged suicide attempt.  Bates was placed under formal arrest on

---

[6]The facts were taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Bates*, 683 So.2d 1370, 1372 (La. App. 1st Cir. 1996); St. Rec. Vol. 1 of 1, 1st Cir. Opinion, 95-KA-1513, p. 2, 11/8/96.

December 27, 1993, at which time the officers advised him of his *Miranda* rights.  Bates waived those rights and gave the officers two written statements about the murder.

After waiving his right to a jury trial, Bates was tried before a judge on January 9 and 10, 1995.[7]  The Court found him guilty as charged of second degree murder.[8]  The Court later sentenced Bates, on February 6, 1995, to serve life in prison at hard labor and without benefit of parole, probation, or suspension of sentence.[9]

On direct appeal, Bates's appointed counsel raised four assignments of error:[10] (1) the Trial Court erred by overruling the defense objection and denying the defense motion to strike the testimony of Coreen Bates related to Bates's inculpatory statement made to her; (2) the trial Court erred by overruling the objection to the admissibility of a knife seized by police; (3) the Trial Court erred by overruling the objection to the admissibility to the crime scene photographs; and (4) the evidence was insufficient to support the verdict.  The Louisiana First Circuit affirmed Bates's conviction on November 8, 1996, finding no merit in the claims.[11]  The Court also noted and corrected the fact that the Trial Court failed to give Bates credit towards his sentence for time served.[12]

---

[7]St. Rec. Vol. 1 of 1, Trial Minutes, 1/9/95; Trial Minutes, 1/10/95; Trial Transcript, 1/9-10/95.

[8]St. Rec. Vol. 1 of 1, Trial Minutes, 1/10/95; Trial Transcript, p. 168, 1/9-10/95.

[9]St. Rec. Vol. 1 of 1, Sentencing Minutes, 2/6/95; Sentencing Transcript, 2/6/95.

[10]*State v. Bates*, 683 So.2d at 1370; St. Rec. Vol. 1 of 1, 1st Cir. Opinion, 95-KA-1513, 11/8/96.

[11]*Id.*

[12]The Trial Court complied with the Court's directive to correct the minute entry and commitment order.  St. Rec. Vol. 1 of 1, Minute Entry, 11/15/96; Minute Entry, 2/5/97.

Bates did not seek rehearing or apply for review in the Louisiana Supreme Court. His conviction and sentence became final thirty (30) days later, on Monday, December 9, 1996, when the time for doing so expired.[13] *See Butler v. Cain,* 533 F.3d 314 (5th Cir. 2008) (citing *Roberts v. Cockrell,* 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final for AEDPA purposes when a state defendant does not timely proceed to the next available step in the state appeal process).

Three years later, on April 12, 1999, Bates submitted an application for post-conviction relief to the Trial Court raising two grounds for relief:[14] (1) the racially discriminatory system of selecting the grand jury in "Lafayette Parish"[15] violated his Fifth, Sixth, Fourteenth Amendment rights; and (2) he was denied effective assistance of counsel where counsel failed to challenge the discriminatory practice of appointing "Lafayette Parish" grand jury forepersons. The Trial Court summarily denied the application on April 21, 1999, as untimely filed.[16]

The Louisiana First Circuit denied Bates's related writ application on August 26, 1999, rejecting the Trial Court's timeliness ruling, and instead finding that Bates's failed to preserve the discriminatory selection issue when he did not file a motion to quash as required by Louisiana law.[17] The Court also held that any such failure by counsel was not ineffective assistance where Bates

---

[13]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do. The thirtieth day was Sunday, December 8, 1996, leaving the deadline to fall on the next business day, Monday, December 9, 1996. La. Code Crim. P. art. 13 (weekends and holidays not included in calculation of period when it would otherwise be the last day of the period).

[14]St. Rec. Vol. 1 of 1, Application for Post-Conviction Relief, 4/13/99 (cover letter dated 4/12/99).

[15]This appears to have been in error since his grand jury was from Tangipahoa Parish.

[16]St. Rec. Vol. 1 of 1, Trial Court Order, 4/21/99; Trial Court Order (2), 4/21/99.

[17]St. Rec. Vol. 1 of 1, 1st Cir. Order, 99-KW-1304, 8/26/99.

failed to establish any prejudice or present the statistical proof required to support the claim. Bates did not seek further review of this ruling.

Almost eleven (11) years later, on June 24, 2010, Bates submitted to the Trial Court a motion to correct his sentence.[18] The Court denied the motion at a hearing held May 3, 2011.[19] The Louisiana First Circuit also denied Bates's related writ application on October 11, 2011, finding that the relief sought could not be raised in a motion to correct.[20] Bates did not seek further review of this ruling.

About three months later, on January 10, 2012, Bates submitted his second application for post-conviction relief to the state trial court raising grounds for relief:[21] (1) the State failed to disprove every reasonable hypothesis of innocence and the evidence did not support the verdict; and (2) the sentence constituted the ex post facto application of law. The Trial Court denied the application without stated reasons on January 17, 2012.[22] Upon Bates's motion, the Court issued written reasons indicating that Bates failed to set forth a ground for post-conviction relief under La. Code Crim. P. art. 930.3.[23]

Bates appealed the Trial Court's ruling to the Louisiana First Circuit, and the Court dismissed the appeal on January 20, 2012, as procedurally improper, because no appeal could be

---

[18]St. Rec. Vol. 1 of 1, Motion to Correct Illegal Sentence, 7/13/10 (dated 6/24/10).

[19]St. Rec. Vol. 1 of 1, Minute Entry, 5/3/11; *see also*, Declaratory Judgment and Demand, 8/12/10 (dated 8/8/10); Trial Court Order, 8/30/10; 1st Cir. Order, 2010-KW-2314, 4/13/11.

[20]St. Rec. Vol. 1 of 1, 1st Cir. Order, 2011-KW-1444, 10/11/11.

[21]St. Rec. Vol. 1 of 1, Uniform Application for Post-Conviction Relief, 1/13/12 (dated 1/10/12).

[22]St. Rec. Vol. 1 of 1, Trial Court Order, 1/17/12.

[23]St. Rec. Vol. 1of 1, Written Reasons for Judgment, 2/13/12 (dated 2/9/12); Motion to Supplement, 2/7/12 (dated 1/31/12).

made from a post-conviction ruling, citing La. Code Crim. P. art. 930.6(A).[24] On August 23, 2012, the Louisiana First Circuit granted Bates leave to resubmit his appeal as an application for supervisory review.[25]

In addressing that writ application, the Louisiana First Circuit held that Bates's second application for post-conviction relief was untimely filed under La. Code Crim. P. art. 930.8.[26] The Court further found that the sufficiency of the evidence claim was repetitive of the issue addressed on direct appeal, citing La. Code Crim. P. art. 930.4(A), and that the claims related to his sentence were not appropriately raised on post-conviction review, citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[27]

The Louisiana Supreme Court denied Bates's related writ application without stated reasons on February 22, 2013.[28]

## II.   Federal Petition

On March 18, 2013, the clerk of the Untied States District Court for the Middle District of Louisiana filed Bates's petition for federal habeas corpus relief, in which he alleges that he was unlawfully convicted and denied a fair trial where the prosecution withheld material evidence of the

---

[24]St. Rec. Vol. 1 of 1, 1st Cir. Order, 2012-KA-0831, 1/20/12.

[25]St. Rec. Vol. 1 of 1, 1st Cir. Order, 2012-KW-1142, 8/23/12.

[26]St. Rec. Vol. 1 of 1, 1st Cir. Order, 2012-KW-1142, 8/24/12.

[27]Under La. Code Crim. P. art. 930.3, as addressed in *State ex rel. Melinie*, Louisiana law prohibits challenges to sentencing errors, including ineffective assistance of counsel, on post-conviction review.

[28]*State ex rel. Bates v. State*, 108 So.3d 764, 765 (La. 2013).

victim's mental health history that would have supported his "provocation defense."[29]  The petition

was transferred to this Court on March 19, 2013, after which Bates paid the filing fee.[30]

In its legally confused answer in opposition to Bates's petition, the State argues that his

federal petition was not timely filed and that the claims are otherwise procedurally barred from

federal review and also meritless.[31]  Bates replied to the State's opposition urging the Court to

excuse his untimely filing and any procedural default under the newly discovered evidence

exceptions to those doctrines and to consider the merits of his claims.[32]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[33] applies to this petition, which is deemed filed in this court under the federal

mailbox rule on March 15, 2013.[34]  The threshold questions in habeas review under the amended

---

[29]Rec. Doc. No. 1.

[30]Rec. Doc. Nos. 3, 4.

[31]Rec. Doc. No. 11.  The State's response confuses the finality of Bates's direct appeal with that of his first round of post-conviction relief, and inexplicably and incorrectly runs the federal filing period from completion of the latter.  The State goes on to absolutely confuse the distinct doctrines of state imposed procedural bars and exhaustion.

[32]Rec. Doc. No. 14.

[33]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of Middle District court filed Bates's federal habeas petition on March 18, 2013.  According to the official stamps from the Louisiana State Penitentiary, Bates submitted the petition to the prison officials on March 15, 2013, for forwarding to a federal court.  Rec. Doc. No. 1.  The pleadings were e-mailed that same day to the clerk of the Middle District.  Rec. Doc. No. 1.  The fact that Bates paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)); *see also Day v. McDonough*, 547 U.S. 198, 205 (2006) (recognizing the AEDPA's statute of limitations as a threshold determination).

The State argues that Bates's federal petition was not timely filed and that his claims are otherwise in procedural default. While the record supports both defenses, for the following reasons, the Court finds that the petition was not timely filed and should be dismissed as time-barred.

## IV.   Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final or one year from the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence.[35]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  Under a broad reading, Bates concedes that his federal habeas corpus petition was filed more than one year after the finality of his conviction under § 2244(d)(1)(A).  However, he

---

of mailing) (citing *Spotville*, 149 F.3d at 376).

[35]The statute of limitations provision of the AEDPA provides for other triggers which are not relevant here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

argues that his petition should be found timely under § 2244(d)(1)(D), claiming that, with the application of statutory tolling, his petition was filed within one year from the discovery of the factual predicate of the prosecutorial misconduct claim, that is, the mental health records of his wife. The Court will address these possible commencement dates based on the record and pleadings, all of which establish that Bates's petition was not timely filed in a federal court under either provision.

### A. Commencment from Discovery of the Factual Predicate

Under § 2244(d)(1)(D), the AEDPA limitations period commences upon the discovery of the factual predicate of the claim when the factual predicate could not have been discovered earlier through the exercise of due diligence. This subsection does not delay the commencement of the limitations period until the date on which the factual predicate of a claim was in fact discovered or developed; rather, it delays the commencement only until the date on which it "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *see Manning v. Epps*, 688 F.3d 177, 189-90 (5th Cir. 2012) (finding argument that §2244(d)(1)(D) runs from actual discovery of claim is an "untenable theory."); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (". . . the time commences when the factual predicate 'could have been discovered through the exercise of due diligence', not when it was actually discovered by a given prisoner . . . [and] . . . not when the prisoner recognizes their legal significance.").

Contrary to Bates's arguments, the commencement date under this subsection would not begin after he "became aware to clear certainty of his rights and entitlements in 2011."[36] Instead, the period runs from the date on which he could have discovered the factual basis for the claim through the exercise of due diligence. In this case, however, the record proves that Bates could have

---

[36]Rec. Doc. No. 1, p. 22.

and actually did discover the basis for his current claim and was in possession of his wife's mental health records in 1996.

While his direct appeal was pending in 1995 and 1996, Bates, acting *pro se*, made considerable efforts to obtain documents to challenge his conviction and the effectiveness of his trial counsel. The record shows, and Bates repeatedly concedes, that between July and October, 1996, the Trial Court granted his requests to subpoena to obtain certain documents to support his challenge. Bates quickly recognized that the records he received as a result of one of the subpoenas "contained . . . relavant exculpatory information."[37]

Among those documents, Bates specifically referenced Carolyn Bates's mental health records from the Rosenblum Mental Health Clinic in Hammond, Louisiana, where she had been "diagnosed and treated . . . for bipolar disorder, manic provisional, and histrionic personality traits."[38] These mental health records caused him to pursue other inpatient records from the Lake Charles Mental Health Clinic where he knew she "was diagnosed and treated for major depression, homicidal ideation, and suicidal inclinations."[39]

Bates argued in his motions to the state trial court that he was to allege on direct appeal "the victim's dangerous character, past over acts of violence, and adverse reactions to prescription medications."[40] He also repeatedly indicated that these records formed a basis to show that his

---

[37]St. Rec. Vol. 1 of 1, Motion to Amend, 11/18/96; Motion to Amend, 10/7/96; Motion in Opposition of Motion to Traverse (undated). Bates included copies of Carolyn Bates's mental health records to several of his state court pleadings.

[38]Id.; Motion to Amend, 10/7/96.

[39]Id.; Motion to Amend, 10/7/96.

[40]Id.; Motion to Amend, 10/7/96.

appointed trial counsel failed to adequately investigate and present his theory of self-defense.[41] Bates even attached a copy of his motion to obtain the mental health records to his first application for post-conviction relief in 1999. While his 1996 request to obtain the Lake Charles records was denied because his appeal had already been resolved, Bates clearly indicated that he personally had reviewed the mental health records he already had and was well-aware of their significance to his self-defense argument.[42]

In spite of these facts, Bates's did not assert his claims of prosecutorial misconduct and ineffective assistance of counsel related to Carol's mental health records until his second state application for post-conviction relief filed twelve (12) years later in 2012. Therefore, not only was the predicate factual information discoverable in 1996, the record establishes that Bates had actual possession of them in 1996 and that he was aware of their significance in challenging his conviction in 1996. The evidence was not new in 2011 and does not provide an exception to the commencement of the AEDPA filing period.

For these reasons, Bates has failed to make a showing sufficient to warrant commencement of the AEDPA one-year limitations period under the provisions of § 2244(d)(1)(D).

**B.      Commencement from Finality of Conviction**

As determined previously, Bates's conviction and sentence were final on December 9, 1996, when he did not seek further review of his direct appeal. Contrary to the State's suggestion, Bates out of time appeal provides the basis for the finality of his conviction. *Jiminez v. Quarterman*, 555 U.S. 113, 121 (2009) (where a state court grants a criminal defendant the right to file an out-of-time

---

[41]St. Rec. Vol. 1 of 1, Motion in Opposition of Motion to Traverse (undated).

[42]Id.; Trial Court Order, 11/20/96.

appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review).

Under the plain language of § 2244, Bates had one year, or until December 9, 1997, to file a timely federal application for habeas corpus relief which he did not do.  Thus, literal application of the statute would bar Bates's § 2254 petition as of that date unless he is entitled to tolling as provided for under the AEDPA and related federal law.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Wardlaw v. Cain*, 541 F.3d 275, 277 (5th Cir. 2008).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In the instant case, the AEDPA filing period began to run on December 10, 1996, the day after Bates's conviction became final. The period ran uninterrupted for 365 days, until December 9, 1997, when it expired. Bates did not have any properly filed state application for post-conviction or other collateral review pending during that period of time. The record does not reflect any basis for statutory tolling to alter the AEDPA filing period, which expired on December 9, 1997.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at

848. Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, __, 130 S.Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Bates has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling under any prong of the § 2244(d) computation. The record does not contain any of the extraordinary circumstances previously recognized by the precedent

cited above.  The record also does not support a finding that Bates was diligent in his efforts to pursue relief on his current claims.  Bates had possession of his wife's mental health records in 1996.  In spite of this, Bates inexplicably did not include his claims in his 1999 state application for post-conviction relief.

Instead, Bates allowed eleven years after resolution of writ application related to his first application for post-conviction relief on August 26, 1999, to pass before filing his next motion for post-conviction relief on June 24, 2010, when he submitted his procedurally improper motion to correct an illegal sentence.  He did not include reference to the mental health records in that motion.  Instead, another eighteen (18) months passed before he submitted his second application for post-conviction relief on January 10, 2012.  These extended pockets of time demonstrate that Bates did not exercise due diligence in preserving or asserting his claims related to the mental health records and his self-defense theory.  There is no reason appearing in the record to apply equitable tolling in this case.

For the foregoing reasons, Bates has failed to establish an alternative commencement date for the filing of his federal petition or that he is entitled to equitable tolling.  The AEDPA limitations period ran from the date his conviction was final on December 9, 1996.  As calculated above, Bates's federal petition is deemed filed in a federal court on March 15, 2013, which was over fifteen (15) years after the AEDPA filing period expired on December 9, 1997.  His petition must be dismissed as time-barred.

**V.**       **Recommendation**

It is therefore **RECOMMENDED** that Paul M. Bates's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[43]

New Orleans, Louisiana, this 30th day of January, 2014.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[43]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.